# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

PEOPLE v LANGSTON

Docket No. 163968. Argued December 10, 2025 (Calendar No. 1). Decided July 28, 2026.

In 1976, a jury convicted defendant, Edwin L. Langston, of first-degree felony murder for aiding and abetting an armed robbery and fatal shooting carried out by Ronald Wilson at a grocery store. Defendant was sentenced to life in prison without the possibility of parole (LWOP). Defendant's conviction was initially reversed on direct appeal on the basis that the trial court had improperly instructed the jury on the *mens rea* requirement of felony murder. 86 Mich App 656 (1978), rev'd 320 NW2d 53 (1982). The prosecution's application for leave to appeal this decision was held in abeyance for *People v Aaron*, 409 Mich 672 (1980), which ultimately held that the element of malice required to convict a defendant of felony murder must be established by proof of intent to kill, intent to cause great bodily harm, or wanton and willful disregard of the likelihood that the natural tendency of one's behavior is to cause death or great bodily harm. However, the *Aaron* Court specified that its decision would apply only to trials in progress and those occurring after the date of the opinion. Following *Aaron*, the Supreme Court reversed the Court of Appeals judgment and reinstated defendant's first-degree murder conviction, citing the part of *Aaron* that limited its holding to prospective application. 320 NW2d 53 (1982). The case eventually returned to the Court of Appeals to consider additional arguments that had been raised on direct appeal. The Court of Appeals affirmed defendant's conviction in an unpublished per curiam opinion, issued May 4, 1988 (Docket No. 95650), and the Supreme Court denied leave to appeal, 431 Mich 911 (1988).

In 2020, defendant moved for relief from judgment, arguing that his conviction must be vacated because the prosecution had not proved malice as required by *Aaron* and that his sentence of LWOP constituted cruel or unusual punishment. The trial court, Kathleen M. Brickley, J., denied the motion because it was constrained by the holding in *Aaron* that it had no retroactive effect and the holding in *People v Hall*, 396 Mich 650 (1976), that the imposition of mandatory LWOP for felony murder was not unconstitutionally cruel or unusual. Defendant sought leave to appeal, which the Court of Appeals denied. Defendant then applied for leave to appeal in the Supreme Court, which directed oral argument on the application. 513 Mich 1118 (2024).

Following oral argument and subsequent supplemental briefing on the sentencing issue, the Supreme Court granted defendant's application for leave to appeal and directed the parties to address six issues: (1) whether *Aaron* correctly limited its application to prospective-only relief;

(2) whether, in the absence of evidence that the defendant acted with malice, mandatory LWOP for felony murder constitutes cruel and/or unusual punishment under Const 1963, art 1, § 16 or US Const, Am VIII; (3) whether *Hall* should be overruled; (4) whether a mandatory sentence of LWOP for felony murder is cruel and/or unusual punishment in all cases decided before *Aaron* or only in those pre-*Aaron* cases where overwhelming evidence of malice was not otherwise presented at trial; (5) if the latter, the standard by which the courts should determine whether sufficient evidence of malice was presented and the means by which a defendant should present such an argument; and (6) what remedy is required if any defendants' sentences of LWOP are found invalid. ___ Mich ___, ___; 18 NW3d 296, 296-297 (2025).

In an opinion by Justice BOLDEN, joined by Justices BERNSTEIN, WELCH, and HOOD, the Supreme Court *held*:

The imposition of mandatory LWOP for pre-*Aaron* felony-murder convictions constitutes cruel or unusual punishment under Article 1, § 16 of the Michigan Constitution if two conditions are met. The defendant must first establish that the jury was not instructed on malice as defined by *Aaron*. If so established, the burden shifts to the prosecution to show beyond a reasonable doubt, on the basis of the evidence presented at trial, that a jury would have found that the defendant acted with malice as defined by *Aaron* had it been so instructed. If the prosecution cannot meet its burden, the remedy is to strike the no-parole aspect of the LWOP sentence, which would render any defendant who qualifies eligible for parole consideration.

1. Defendant met his burden to establish good cause for filing his motion for relief from judgment under MCR 6.508(D)(3) because the legal basis for his sentencing argument was not reasonably available on direct appeal. Shortly before defendant's conviction, *Hall* held that mandatory LWOP for felony murder did not constitute cruel or unusual punishment under the proportionality test from *People v Lorentzen*, 387 Mich 167 (1972). Throughout the pendency of his direct appeal, constitutional sentencing law under Const 1963, art 1, § 16 remained largely static. However, beginning in 2010, a series of United States Supreme Court decisions imposed new constitutional limitations on mandatory LWOP sentences for juvenile offenders, and the Michigan Supreme Court expanded on the protections set forth in those cases to hold that mandatory LWOP for offenders under 21 years old violates Michigan's prohibition on cruel or unusual punishment, marking a consistent trend away from the mandatory imposition of LWOP for first-degree murder when that punishment is not tailored to a defendant's personal responsibility and moral guilt. These developments in precedent established good cause under MCR 6.508(D) because they provided a reasonable legal basis for the cruel-or-unusual-punishment argument that did not exist at the time of defendant's prior appeals.

2. To determine whether a punishment is cruel or unusual, Michigan courts consider the factors in *Lorentzen* and *People v Bullock*, 440 Mich 15 (1992): (1) the severity of the sentence relative to the gravity of the offense, (2) sentences imposed in the same jurisdiction for other offenses, (3) sentences imposed in other jurisdictions for the same offense, and (4) the goal of rehabilitation. First, imposing LWOP, the most severe sentence available in Michigan, is grossly disproportionate to the gravity of the offense where a jury made no finding that a defendant acted with malice as defined by *Aaron* and the prosecution cannot establish beyond a reasonable doubt that such malice would have otherwise been found. Second, mandatory LWOP is imposed for

first-degree murder, habitual first-degree criminal sexual conduct against a child under 13, and a few other offenses resulting in death, including crimes that require proof of intent akin to malice. The nature of these crimes reflects the Legislature's determination that Michigan's use of mandatory LWOP should be reserved for those whose criminal culpability mandates automatic, permanent removal from society, as contrasted with those who caused an unforeseen or accidental death. Third, Michigan is among a small number of states that mandate LWOP for felony murder. And finally, mandatory imposition of LWOP forecloses the possibility of release and therefore does not further the goal of rehabilitation. Accordingly, the imposition of mandatory LWOP for pre-*Aaron* felony-murder convictions is constitutionally impermissible cruel or unusual punishment where the jury made no finding of malice as defined by *Aaron*, unless the prosecution can show beyond a reasonable doubt, on the basis of the evidence presented at trial, that the jury would have found such malice had it been so instructed.

3. To obtain relief from a sentence of LWOP for a pre-*Aaron* felony-murder conviction, in keeping with MCR 6.508(D), the defendant has the initial burden to establish that the jury was not instructed on—and thus made no finding on—malice as defined by *Aaron*. If a defendant makes this showing, the burden shifts to the prosecution to establish beyond a reasonable doubt that the jury would have found that the defendant acted with such malice on the basis of the evidence presented at trial. If a defendant succeeds in establishing that their sentence was invalid, the remedy is to strike the element of their sentence that eliminates the possibility of parole.

4. The holding in *Hall* that Const 1963, art 1, § 16 permits a mandatory punishment of LWOP for felony murder was left undisturbed to the extent it applies to a defendant who was at least 21 years old at the time of the offense and not within the class of offenders entitled to relief pursuant to the framework in this opinion, because the question whether mandatory LWOP for felony murder is unconstitutional in all its applications was not before the Court.

5. Defendant's jury was not instructed that it could find malice by intent to kill or cause great bodily harm. The closest the instructions came to articulating *Aaron*-like malice was that the jury could find him guilty of felony murder if the murder was fairly within the scope of a criminal enterprise and might have been expected to happen in the course of committing the robbery with a pistol, but a significant gap existed between this instruction and the "wanton and willful" formulation of malice, and the instruction did not require the jury to find that defendant should have known that a murder might occur. Establishing that a person acted with a "wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm" presents a heavier burden of proof of intent, akin to criminal gross negligence. As the Court of Appeals originally held on direct appeal, defendant has shown that his jury was not instructed on malice as later defined in *Aaron*. Accordingly, the burden has shifted to the prosecution to prove beyond a reasonable doubt that a rational jury would have found that defendant acted with malice as defined by *Aaron* had it been so instructed. The prosecution has not yet had an opportunity to meet this burden, so the trial court order denying sentencing relief was vacated in part and the case was remanded for further proceedings.

6. The order granting defendant leave to appeal was vacated in part as to the question whether *Aaron* correctly limited its application to prospective-only relief, and leave was denied with respect to that issue.

Trial court order vacated in part and case remanded to the trial court for expedited further proceedings.

Chief Justice CAVANAGH, concurring in part and dissenting in part, agreed that defendant showed good cause as required under MCR 6.508(D)(3)(a) and that an LWOP sentence imposed for a felony-murder conviction where a jury made no finding of malice as the term was defined in *Aaron* is grossly disproportionate and thus invalid for purposes of the "actual prejudice" requirement of MCR 6.508(D)(3)(b)(iv). However, she disagreed with the majority's remedy, stating that she would have struck the no-parole aspect of defendant's sentence and ordered that he be resentenced to life with the possibility of parole in accordance with the remedy applied in *People v Bullock*, 440 Mich 15 (1992). She explained that she was not persuaded by the majority's turn to the harmless-error standard as it applies in instances where a jury instruction is omitted, given that defendant's conviction was based on a jury finding beyond a reasonable doubt with respect to all the elements required at that time, and she stated that application of the harmless-error doctrine was unfair in this situation because a defendant who did not know that this iteration of malice was an element of the crime had no motivation to dispute malice or put forth evidence in opposition to evidence that would support a finding of malice. Because *Bullock* provides a workable remedy, she would not have searched other areas of the law, including the harmless-error standard of review applicable to jury instruction omissions or Eighth Amendment capital-sentencing jurisprudence, to create a new and unnecessary framework.

Justice ZAHRA, dissenting, would have held that defendant was not entitled to relief because the Supreme Court expressly concluded that *Aaron* should have prospective effect only and because defendant failed to establish good cause under MCR Subchapter 6.500. He explained that a judgment of conviction and sentence that has survived direct review is entitled to a strong presumption of finality, noting that the state's interest in closing disputes is at its highest when the state invokes its power to adjudge guilt and impose punishment in a criminal proceeding. He stated that finality is not a mere technicality, but a core value of the criminal justice system upon which the legitimacy of the criminal law depends. While he acknowledged that the state's commitment to finality in criminal jurisprudence is not absolute, he concluded that defendant failed to establish a right to relief under the narrow exceptions to finality provided under Michigan's court rules.

Justice THOMAS did not participate because of her prior involvement in this case.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 28, 2026

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 163968

EDWIN LAMAR LANGSTON,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except THOMAS, J.)

BOLDEN, J.

In *People v Aaron*, 409 Mich 672, 728; 299 NW2d 304 (1980), this Court held that the element of malice required to convict a defendant of felony murder must be established by proof of intent to kill, intent to cause great bodily harm, or wanton and willful disregard of the likelihood that the natural tendency of one's behavior is to cause death or great bodily harm. The *Aaron* Court concluded, however, that its decision would not apply retroactively to trials already completed. *Id*. at 734. As a result, this Court upheld the pre-*Aaron* felony-

murder conviction of defendant, Edwin Lamar Langston, who was found guilty in 1976 and sentenced to the legislatively mandated penalty of life imprisonment without the possibility of parole (LWOP).

Langston asks us to revisit the lawfulness of his conviction and sentence. With respect to the sentence, we consider whether mandatory LWOP violates the Michigan Constitution's ban on "cruel or unusual" punishment where a jury never found that the defendant intended to kill, intended to cause great bodily harm, or wantonly and willfully disregarded the likelihood that the natural tendency of their behavior was to cause death or great bodily harm. Const 1963, art 1, § 16. Put differently, if a jury made no finding that a defendant exhibited malice as defined by *Aaron*, is mandatory LWOP a constitutionally permissible sentence?

We hold that mandatory LWOP for pre-*Aaron* felony murder constitutes cruel or unusual punishment under Article 1, § 16 of the Michigan Constitution if two conditions are met. The defendant must first establish that the jury was not instructed on malice as defined by *Aaron*. If so established, the burden shifts to the prosecution to show beyond a reasonable doubt, on the basis of the evidence presented at trial, that a jury would have found that the defendant acted with such malice had it been instructed in accordance with *Aaron*. If the prosecution cannot meet its burden, the defendant is entitled to relief. We also conclude that the constitutionally permissible remedy is to strike the portion of the sentence prohibiting parole eligibility, which would make any qualifying defendant eligible for parole consideration.

As applied here, Langston has established that the jury in his case was not instructed on malice as defined by *Aaron*. But the prosecution has not yet had an opportunity to meet

2

its burden under the test we announce today.  We therefore vacate in part the trial court's order denying relief from judgment and remand to that court for further proceedings consistent with this opinion.[1]

## I.  *AARON* AND THE DOCTRINE OF FELONY MURDER

Central to this case is the doctrine of felony murder and the culpability of those convicted of this offense before *Aaron*.  In Michigan, first-degree felony murder is a killing with malice that occurs during the commission of an enumerated felony.  *People v Nowack*, 462 Mich 392, 401; 614 NW2d 78 (2000); MCL 750.316(1)(b).  Proof of malice separates all forms of murder, including felony murder, from manslaughter.  *People v Mendoza*, 468 Mich 527, 533-534; 664 NW2d 685 (2003).

At common law, malice for purposes of felony murder could be shown by proving intent to commit the underlying felony alone.  See *Aaron*, 409 Mich at 689-698 (discussing the origins of the felony-murder doctrine).  This common-law rule thus equally punished "all homicides, committed in the perpetration or attempted perpetration of proscribed felonies whether intentional, unintentional or accidental, without the necessity of proving the relation between the homicide and the perpetrator's state of mind."  *Id*. at 708.

In *Aaron*, the Court considered whether to modify the requirements for proving malice to obtain a conviction in felony-murder cases.  Initially, because the common law

---

[1] We also vacate the portion of our order granting leave to appeal as to the issue of whether *Aaron* correctly limited its application to prospective relief only and now deny leave to appeal on that issue because we are no longer persuaded that the question presented should be reviewed by this Court.  In other words, we decline to address Langston's challenge to his felony-murder conviction, so we do not disturb the portion of the trial court's order denying relief on this issue.

3

continues to prevail in Michigan unless abrogated by the Constitution, the Legislature, or this Court, *Aaron* concluded that the common-law doctrine remained the law in the state. *Id*. at 722-723. The Court explained, however, that the doctrine violates a core principle of criminal law—that determinations of guilt should be based on individual culpability. *Id*. at 708. Relevant to cases involving multiple offenders, *Aaron* recognized that "hold[ing] one felon liable for the unforeseen and unagreed-to results of another felon" is fundamentally unfair. *Id*. at 731. After discussing Michigan caselaw that further undermined the justification for the doctrine, *id*. at 723-727, the Court deemed it appropriate to "abolish the rule which defines malice as the intent to commit the underlying felony," *id*. at 727. The Court then announced the definition of malice that remains today: "[M]alice is the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm." *Id*. at 728. "If the jury concludes that malice existed, they can find murder and, if they determine that the murder occurred in the perpetration or attempted perpetration of one of the enumerated felonies, by statute the murder would become first-degree murder." *Id*. at 730. In closing, the Court summarily decided that its holding applied only to the parties at issue, as well as to "all trials in progress and those occurring after the date of this opinion." *Id*. at 734.[2]

---

[2] The Court later made an exception in *People v Wilder*, 411 Mich 328, 337; 308 NW2d 112 (1981), overruled in part on other grounds by *People v Ream*, 481 Mich 223 (2008). While *Wilder* was not argued together with *Aaron*, the Court had granted leave in *Wilder* on the same day as it did in *Aaron*. *Id*. Because *Wilder* essentially raised an identical issue to that raised in *Aaron*, the Court treated *Wilder* as a companion case for purposes of applying the rule announced in *Aaron*. *Id*. After deciding *Wilder*, the Court also granted relief to that defendant's codefendant. *People v Butts*, 411 Mich 1041 (1981).

First-degree felony murder remains a crime in Michigan, MCL 750.316(1)(b), but *Aaron* clarified the necessary intent to prove it. It held that the circumstances of the underlying felony remain relevant, as does the fact that a death occurred during a felony, and it also held that a jury may properly infer malice from the nature of the felony and the facts surrounding its commission. *Aaron*, 409 Mich at 728-730. But "the jury may not find malice [to commit the murder] from the intent to commit the underlying felony alone." *Id*. at 730. Therefore, since *Aaron*, to prove the element of malice for felony murder, the prosecution must show beyond a reasonable doubt that the defendant "intended to kill, intended to cause great bodily harm, or wantonly and willfully disregarded the likelihood that the natural tendency of his behavior was to cause death or great bodily harm." *People v Riley (After Remand)*, 468 Mich 135, 140-141; 659 NW2d 611 (2003).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1976, a jury convicted Langston of first-degree felony murder for his role in aiding and abetting an armed robbery and shooting carried out by Ronald Wilson. The crime occurred when Wilson robbed a grocery store and fatally shot one of the store's owners, Arretta Ingraham. Langston had previously gone inside the store while Wilson stayed in his car. Then, when Langston returned to the car, Wilson asked how many people were inside, and Langston told him that two women and two children were in the store. Langston claimed that he wanted no involvement in a robbery, so he took the car and drove up the street while Wilson went inside the store, committed a robbery, and fatally shot a victim. It is undisputed that Langston was not present in the store during the robbery or shooting. After the killing, Wilson exited the store and ran up the street, and he and

5

Langston ultimately left the area in Wilson's car. The prosecution presented additional evidence that Langston met with Wilson later that night and discussed burning a wallet that Wilson stole during the robbery.

Langston was charged with first-degree felony murder on an aiding-and-abetting theory.[3] The trial court instructed the jury that in order to convict Langston, it first had to find *Wilson* guilty of felony murder beyond a reasonable doubt. To do so, the jury had to find that Wilson either "intended to kill" the victim or "consciously engaged in committing a serious crime, robbery, using a pistol which was naturally and inherently dangerous to human life in the manner of which that crime of robbery was committed[.]" The trial court later instructed the jury on the elements that it had to find were established to convict Langston as an aider and abettor:

> First, that the defendant intended to commit the crime of robbery at the time that he allegedly aided and abetted or encouraged Ronald Wilson;
>
> Second, that the defendant performed acts or gave encouragement which in fact did aid, or abet, or assist in the commission of the crime of robbery;
>
> Third, that the crime of murder occurred as a result of this robbery;
>
> Fourth, that this murder which occurred was fairly within the scope of a criminal enterprise and it might have been expected to happen in the course of committing this robbery with a pistol.

---

[3] Wilson was tried separately and convicted of first-degree felony murder. See *People v Wilson*, 84 Mich App 636; 270 NW2d 473 (1978). On direct appeal, the Court of Appeals reversed his conviction and remanded for entry of a judgment of conviction on the lesser included offense of manslaughter and for resentencing. *Id*. at 638. After its decision in *Aaron*, this Court reversed the Court of Appeals judgment and reinstated Wilson's felony-murder conviction. *People v Wilson*, 411 Mich 990 (1981).

The jury was also instructed on the lesser included offenses of second-degree murder and manslaughter. Langston was convicted of first-degree felony murder, and the trial court sentenced him to mandatory LWOP.[4]

A series of procedural oddities followed on direct appeal. Langston argued in the Court of Appeals that the trial court improperly instructed the jury on the *mens rea* requirement of felony murder. The Court of Appeals agreed, so it reversed the conviction and remanded for a new trial. *People v Langston*, 86 Mich App 656, 660; 273 NW2d 99 (1978), rev'd 320 NW2d 53 (1982). The panel held: "Although the record contains facts from which an inference of malice might have been drawn (*i.e.*, aiding an armed robbery itself creates a risk of death), the issue must be retried and put before the jury." *Id*. at 661. The prosecution filed an application for leave to appeal, which this Court held in abeyance for *Aaron*. Following the decision in *Aaron*, this Court initially denied the prosecution's application. *People v Langston*, 412 Mich 903 (1982). But the prosecution moved for reconsideration, and this Court granted the request, reversed the judgment of the Court of Appeals, and reinstated Langston's first-degree murder conviction. *People v Langston*,

---

[4] At the time of Langston's conviction, Michigan's first-degree murder statute provided:

> All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life. [MCL 750.316, as amended by 1969 PA 331.]

7

320 NW2d 53 (1982).[5]  In reinstating the conviction, this Court cited the portion of *Aaron*

that limited its holding to prospective application.  *Id*., citing *Aaron*, 409 Mich at 734.  In

other words, although the Court of Appeals' holding in *Langston* was similar to the

conclusion reached in *Aaron*, this Court reversed the Court of Appeals on the basis that

*Aaron* applied only to trials in progress and those occurring thereafter.

The case eventually returned to the Court of Appeals to consider additional

arguments that had been raised on direct appeal.  The Court of Appeals affirmed the

conviction, and this Court denied leave to appeal.  *People v Langston*, unpublished per

curiam opinion of the Court of Appeals, issued May 4, 1988 (Docket No. 95650); *People*

*v Langston*, 431 Mich 911 (1988).  Langston claims that he filed a motion for relief from

judgment in 1992, which was denied.  He attempted to file another motion for relief from

judgment in 2003.  Because that motion failed to comply with procedural filing

requirements, the trial court returned the submission without filing it.

In 2020, with the assistance of counsel, Langston filed the motion for relief from

judgment at issue here.  Relying on *Aaron*, he argued that his conviction must be vacated.

He contended that the *Aaron* Court interpreted the first-degree murder statute to require

malice; therefore, the prosecution never proved an essential element of the crime for which

he was convicted, in violation of due process.  Langston also challenged his sentence,

arguing that mandatory LWOP for pre-*Aaron* felony-murder convictions obtained without

---

[5] This Court's order—which was not published in the Michigan Reports, notwithstanding a citation of "413 Mich 911" in the North Western Reporter—noted that the earlier order denying leave to appeal was entered "as a result of clerical error."  *Id*. at 53.

proven *mens rea* constituted either "cruel and unusual" or "cruel or unusual" punishment under the United States and Michigan Constitutions, respectively.

The trial court issued an opinion and order denying the motion for relief from judgment because it was "constrained to follow established precedent . . . ." Langston's challenge to his conviction lacked merit, the trial court concluded, because *Aaron* held that its opinion had no retroactive effect. Similarly, with respect to Langston's challenge to his LWOP sentence, the trial court explained that it was bound by *People v Hall*, 396 Mich 650; 242 NW2d 377 (1976), to reject the argument. Still, the trial court noted that jurisprudence in Michigan had evolved significantly in the nearly 50 years since *Hall*, so the case was "ripe for review" by this Court. Langston sought leave to appeal, which the Court of Appeals denied. *People v Langston*, unpublished order of the Court of Appeals, entered December 2, 2021 (Docket No. 358537).

Langston then applied for leave to appeal in this Court. We directed oral argument on the application. *People v Langston*, 513 Mich 1118 (2024). Following oral argument in January 2025, we requested and received supplemental briefing on the sentencing issue. *People v Langston*, ___ Mich ___; 15 NW3d 820 (2025). Upon further consideration, we granted Langston's application for leave to appeal and directed the parties to address six issues:

> (1) whether *People v Aaron*, 409 Mich 672 (1980), correctly limited its application to prospective-only relief; (2) whether, in the absence of evidence that the defendant acted with malice, mandatory life without parole for felony murder constitutes cruel and/or unusual punishment under Const 1963, art 1, § 16 or US Const, Am VIII; (3) whether *People v Hall*, 396 Mich 650 (1976), should be overruled; (4) whether a mandatory sentence of life imprisonment without parole for felony murder is cruel and/or unusual punishment under Const 1963, art 1, § 16 or US Const, Am VIII, in all cases decided before

9

*Aaron*, *supra*, where the jury was not required to make a finding of malice, or only in those pre-*Aaron* cases where overwhelming evidence of malice was not otherwise presented at trial; (5) if the latter, the standard by which the courts should determine whether sufficient evidence of malice was presented and the means by which a defendant should present such an argument; and (6) what remedy is required if any defendants' sentences of mandatory life imprisonment without parole are found invalid. [*People v Langston*, ___ Mich ___, ___; 18 NW3d 296, 296-297 (2025).]

We turn to our discussion of the sentencing issues.[6]

## III. GOOD CAUSE UNDER MCR 6.508(D)

The filing of a motion for relief from judgment under MCR Subchapter 6.500 is generally the exclusive means to challenge a criminal conviction or sentence that is no longer subject to direct appeal. See MCR 6.501. And after August 1, 1995, with several exceptions, only one motion for relief from judgment may be filed with respect to a conviction. MCR 6.502(G)(1) and (2).[7] A defendant who files such a motion has the burden to establish entitlement to relief. MCR 6.508(D). Relief is generally barred if the motion raises an issue that was previously decided against the defendant. MCR 6.508(D)(2).[8] Similarly, if the motion alleges grounds for relief that *could* have been raised

---

[6] As noted earlier, we vacate our grant of leave to appeal on the first issue and now deny leave with respect to that issue. Thus, contrary to Justice ZAHRA's view, we do not, "effectively" or otherwise, apply the decision in *Aaron* retroactively. Our opinion simply does not address the issue.

[7] The trial court correctly determined that the procedural bar on successive motions does not apply here because this is Langston's first motion filed after August 1, 1995. See MCR 6.502(G)(1). Because the 2003 motion was returned by the trial court without filing, it does not count toward the successive-motion bar. See MCR 6.502(D); *People v Starnes*, 505 Mich 1052, 1052 (2020).

[8] We agree with the trial court that relief is not barred under MCR 6.508(D)(2). While Langston claims to have filed a motion for relief from judgment *in propria persona* in 1992, nothing in the register of actions or the lower court record corroborates that any submission was made. The trial court's opinion in this case states that the 1992 filing and

10

on direct appeal or in a prior motion for relief from judgment (but were not), a court may not grant the motion unless the defendant shows "good cause" for this failure and "actual prejudice" from the alleged irregularities. MCR 6.508(D)(3).

Langston argues that he has good cause for raising his sentencing challenge now because the caselaw on which he relies was not available at the time of his direct appeal. "Good cause" can be established "by showing that some external factor prevented counsel from previously raising the issue." *People v Reed*, 449 Mich 375, 378; 535 NW2d 496 (1995). External factors include " 'showing that the factual or legal basis for a claim was not reasonably available to counsel . . . .' " *Id*. at 385 n 8, quoting *Murray v Carrier*, 477 US 478, 488; 106 S Ct 2639; 91 L Ed 2d 397 (1986). We conclude that Langston has met his burden to establish good cause because the legal basis for his sentencing argument was not reasonably available on direct appeal or for decades to come.

Shortly before Langston's conviction, this Court held in *Hall*, 396 Mich at 657-658, that mandatory LWOP for felony murder did not constitute cruel or unusual punishment under the proportionality test from *People v Lorentzen*, 387 Mich 167; 194 NW2d 827

---

the order denying the motion "have since been lost," but it is unclear whether the trial court was able to otherwise verify that a motion for relief from judgment was filed in the first place. Assuming a motion was in fact filed in 1992, there is nothing in the record to suggest that this motion raised the same constitutional sentencing issue that is raised here, and the prosecution does not argue as much. We therefore accept as uncontested by the parties that this issue has never been decided against Langston in a prior proceeding. Nonetheless, Justice ZAHRA suggests that Langston's current sentencing challenge is a mere "repackaged attack on the validity of his conviction" that this Court rejected when we reinstated his conviction on direct appeal in 1982. See *Langston*, 320 NW2d at 53. That argument stretches the scope of MCR 6.508(D)(2) beyond its plain language. Nothing in this Court's 1982 order addressed a constitutional sentencing challenge, nor had one been raised by Langston on direct appeal.

11

(1972). Throughout the pendency of his direct appeal, which extended more than 10 years, constitutional sentencing law under Const 1963, art 1, § 16 remained largely static. Therefore, tenable legal grounds did not exist on direct appeal to bring this current sentencing challenge.[9]

But significant jurisprudential developments in constitutional sentencing law have since occurred. Beginning in 2010, a series of United States Supreme Court decisions imposed new constitutional limitations on mandatory LWOP sentences for juvenile offenders. First, the Court held that sentencing a juvenile to LWOP for a nonhomicide offense violates the Eighth Amendment's prohibition of "cruel and unusual" punishments. *Graham v Florida*, 560 US 48, 82; 130 S Ct 2011; 176 L Ed 2d 825 (2010). Soon after, the Court held that the same constitutional infirmity exists with the imposition of mandatory LWOP for juveniles convicted of homicide. *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012). The Court later held that its decision in *Miller* applies retroactively to cases on collateral review. *Montgomery v Louisiana*, 577 US 190, 206; 136 S Ct 718; 193 L Ed 2d 599 (2016). Although published after the instant motion was filed, this Court has expanded on the protections set forth in *Graham* and *Miller* in cases holding that mandatory LWOP for offenders under 21 years old violates Michigan's prohibition on "cruel or unusual" punishment. *People v Parks*, 510 Mich 225,

---

[9] We would reach the same conclusion even if we assumed that Langston had filed a motion for relief from judgment in 1992. At that time, there had been no precedential changes regarding the permissibility of mandatory LWOP as punishment for felony murder under Michigan's cruel-or-unusual-punishment clause.

266; 987 NW2d 161 (2022); *People v Taylor*, ___ Mich ___, ___; ___ NW3d ___ (April 10, 2025) (Docket No. 166428); slip op at 2.[10]

While these cited cases are not dispositive of the issue before us,[11] they mark a consistent trend away from the mandatory imposition of LWOP for first-degree murder when that punishment is not "tailored to a defendant's personal responsibility and moral guilt." *Taylor*, ___ Mich at ___; slip op at 22 (quotation marks and citation omitted). These developments in precedent establish good cause under MCR 6.508(D) because they provide a reasonable legal basis for the cruel-or-unusual-punishment argument that did not exist at the time of his prior appeals. See *Reed*, 449 Mich at 385 n 8.[12] Having established that Langston showed good cause, we turn to actual prejudice. MCR 6.508(D)(3)(b).

## IV. CONSTITUTIONALITY OF LWOP SENTENCE

With respect to a sentencing challenge, actual prejudice is shown when "the sentence is invalid." MCR 6.508(D)(3)(b)(iv). Thus, the actual-prejudice inquiry rises and falls with the merits of Langston's constitutional argument. Langston argues that his sentence is invalid because the mandatory imposition of LWOP for pre-*Aaron* felony murder constitutes punishment that is cruel and/or unusual under the United States and

---

[10] *Taylor* was decided with a companion case, *People v Czarnecki* (Docket No. 166654).

[11] Langston was 23 years old at the time of the offense.

[12] In his application to this Court, Langston argued that the good-cause requirement should be waived because there is a significant possibility that he is "legally innocent" of the crime. See MCR 6.508(D) ("The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime."). Given our conclusion that good cause has been shown, we decline to address this argument.

13

Michigan Constitutions. US Const, Am VIII; Const 1963, art 1, § 16.[13] Specifically, Langston contends that, where a jury made no finding that he acted with malice, subjecting him to the harshest penalty available under Michigan law is grossly disproportionate and unusually excessive. We agree in part. Where a jury was not instructed to find malice as defined by *Aaron*, mandatory LWOP for pre-*Aaron* felony-murder convictions constitutes cruel or unusual punishment under Const 1963, art 1, § 16, unless the prosecution can show beyond a reasonable doubt, on the basis of the evidence presented at trial, that the jury would have found such malice had it been so instructed.

## A. STANDARD OF REVIEW

We apply de novo review to questions of constitutional law, such as whether a defendant's sentence constitutes cruel or unusual punishment under art 1, § 16 of the Michigan Constitution. *People v Stovall*, 510 Mich 301, 312; 987 NW2d 85 (2022). On de novo review, we evaluate an issue independently and without deference to the lower courts. *Id*.

## B. LEGAL BACKGROUND

While the United States Constitution prohibits "cruel *and* unusual" punishment, the Michigan Constitution prohibits "cruel *or* unusual" punishment. US Const, Am VIII; Const 1963, art 1, § 16 (emphasis added). Recognizing this textual difference and other factors, this Court has long held and reaffirmed that Michigan's provision offers broader protection than its federal counterpart. *People v Bullock*, 440 Mich 15, 30; 485 NW2d 866

---

[13] Because we are deciding this case on state constitutional grounds, we decline to consider whether the Eighth Amendment provides comparable protection under the circumstances of this case.

14

(1992); *Parks*, 510 Mich at 241-243, 243 n 5; *Taylor*, ___ Mich at ___; slip op at 8.[14] We have interpreted Const 1963, art 1, § 16 to prohibit "unusually excessive imprisonment," *Lorentzen*, 387 Mich at 172, and sentences that are "grossly disproportionate," *Bullock*, 440 Mich at 37.

Although applying the principle of proportionality embodied in our Constitution's ban on cruel or unusual punishment is a difficult task, "we are duty-bound to devise a principled test by which to enforce that prohibition, and to apply that test to the cases that are brought before us." *Bullock*, 440 Mich at 41. That test, first developed in *Lorentzen* and repeated in *Bullock*, considers four factors in evaluating the proportionality of a criminal sentence under Const 1963, art 1, § 16:

> (1) the severity of the sentence relative to the gravity of the offense; (2) sentences imposed in the same jurisdiction for other offenses; (3) sentences imposed in other jurisdictions for the same offense; and (4) the goal of rehabilitation . . . . [*Parks*, 510 Mich at 242, citing *Bullock*, 440 Mich at 33-34.]

### C. APPLICATION OF *LORENTZEN-BULLOCK* FACTORS

Examining the *Lorentzen-Bullock* factors in their totality, we conclude that the imposition of mandatory LWOP for pre-*Aaron* felony murder is constitutionally impermissible cruel or unusual punishment where the jury made no finding of malice as defined by *Aaron*, unless the prosecution can show beyond a reasonable doubt, on the basis of the evidence presented at trial, that the jury would have found such malice had it been so instructed.

---

[14] To the extent amicus curiae Prosecuting Attorneys Association of Michigan urges us to conclude otherwise, we again decline to do so. See *Taylor*, ___ Mich at ___; slip op at 8 n 5.

15

### 1. SEVERITY OF SENTENCE COMPARED TO GRAVITY OF OFFENSE

In considering the first factor, "[t]here can be no dispute that any form of murder is one of the most severe and heinous crimes that a person can commit in any jurisdiction, and first-degree murder is particularly heinous." *Parks*, 510 Mich at 256. Our Legislature has deemed felony murder to be murder in the first degree, MCL 750.316(1)(b), subjecting it to the same penalty as willful, deliberate, and premeditated murder, MCL 750.316(1)(a). The penalty for first-degree felony murder—mandatory LWOP—is the most severe punishment that may be imposed in Michigan.[15]

We also recognize that this case involves a group of offenders convicted of felony murder who may not have acted with the *mens rea* that otherwise makes the crime of first-degree murder so grave. As compared to those who killed with malice as defined by *Aaron*, "it would be profoundly unfair to impute full personal responsibility and moral guilt" to individuals who did not exhibit such malice. *Bullock*, 440 Mich at 39. Of this latter group, some may also have been convicted as an aider and abettor, a status that is "undoubtedly relevant in the punishment context." *Parks*, 510 Mich at 260 n 13, citing *Miller*, 567 US at 478. Accordingly, where a jury made no finding that a defendant acted with malice as defined by *Aaron* and the prosecution cannot establish beyond a reasonable doubt that such malice would have otherwise been found, imposing the most severe sentence in this state is grossly disproportionate to the gravity of the offense. The "remote possibility" of clemency by the Governor does not alter that reality. *Graham*, 560 US at 70. On the other

---

[15] The death penalty has long been abolished in Michigan, see *Parks*, 510 Mich at 257 n 10, and its prohibition remains enshrined in our Constitution, Const 1963, art 4, § 46.

hand, where the evidence demonstrates obvious malice despite the lack of an *Aaron* instruction, this first factor is weighed differently.

To illustrate, an individual who aids or abets a robbery without intent to kill, intent to cause great bodily harm, or "knowledge of the principal's intent" to do the same, *Riley*, 468 Mich at 141, should not be mandatorily sentenced to die in prison simply because the principal offender killed. See *Graham*, 560 US at 69 (stating that those "who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers"). And yet an aider or abettor convicted of felony murder in Michigan under the pre-*Aaron* common-law rule of malice received the same mandatory penalty as the principal perpetrator, no matter the gap that existed in their intent. Because the gravest punishment is mandatorily awarded irrespective of the defendant's malicious intent, this factor favors a finding of gross disproportionality.

## 2. SENTENCES IMPOSED IN MICHIGAN FOR OTHER OFFENSES

The next factor examines the sentences authorized by the Legislature for other crimes in Michigan. Mandatory LWOP, as noted, is the harshest punishment available in this state, and it can only be imposed in very limited circumstances. The penalty applies to first-degree murder, MCL 750.316(1); habitual first-degree criminal sexual conduct against a child under 13 years old, MCL 750.520b(2)(c); and a few other offenses that result in death, MCL 791.234(6)(b), (c), (d), and (f). Notably, this latter group includes crimes that require proof of intent akin to malice. For instance, mandatory LWOP applies to conduct resulting in a death following the adulteration, misbranding, or mixing of drugs, and the sale or manufacture of such drugs, with an intent to kill or cause serious bodily

17

impairment. MCL 750.16(5); MCL 750.18(7); MCL 333.17764(7). See also MCL 750.436(1)(a) and (2)(e) (imposing mandatory LWOP for willfully poisoning food or drink and causing death). Mandatory LWOP also applies to the delivery, placement, or possession of explosive devices or similarly dangerous substances with intent to frighten, terrorize, intimidate, threaten, harass, injure, or kill any person when such conduct causes death. MCL 750.204(1) and (2)(e); MCL 750.207(1) and (2)(e); MCL 750.210(1) and (2)(e). The sentence must likewise be imposed for a conviction of terrorism that causes death, which requires proof that the offender acted knowingly and with premeditation. MCL 750.543f. The nature of these crimes reflects the Legislature's determination that Michigan's use of mandatory LWOP should be "reserved for those whose criminal culpability mandates automatic, permanent removal from society." *Parks*, 510 Mich at 260.

Juxtaposed against these other state-law offenses is the type of conduct at issue here—felony murder without a finding or clear proof that the defendant acted with malice as defined by *Aaron*. Before *Aaron*, a defendant convicted under these circumstances could receive LWOP for an unforeseen or accidental death. See *Aaron*, 409 Mich at 731. Today, however, mandatory LWOP is generally limited in Michigan to circumstances in which individuals exhibit far greater culpability, including malice. Consider also the potential difference in sentencing exposure between individuals engaged in the same conduct before and after *Aaron*. Pre-*Aaron*, an individual who participated in an armed robbery in which a death resulted, but who did not act with necessary malice with respect to that killing, could be found guilty of felony murder and punished with the harshest sentence under Michigan law. Post-*Aaron*, however, an individual in those same circumstances would be

18

not guilty of felony murder and, if convicted of armed robbery, a trial court would have discretion to sentence the individual to parolable life imprisonment or any term of years. MCL 750.529.[16] The dichotomy is self-evident: the former offender sentenced to LWOP versus the latter offender incarcerated for possibly decades less, even though neither acted with malice as defined by *Aaron*. Where an individual continues to serve the harshest sentence for conduct that could never justify such a penalty today, this factor also favors a finding of gross disproportionality.

3. SENTENCES IMPOSED IN OTHER STATES FOR THE SAME OFFENSE

We consider next the punishments imposed in other jurisdictions for felony murder. At the outset, we acknowledge that some state felony-murder laws differ in the level of intent required to prove the offense. Compare *State v Harrison*, 914 NW2d 178, 192 (Iowa, 2018) (holding that "first-degree murder under the felony-murder rule only requires a showing that the defendant acted with the specific intent to commit the predicate felony that led to the killing"), with *Aaron*, 409 Mich at 733. For purposes of this *Lorentzen-Bullock* factor, however, our best measure of comparison is the penalty imposed in other states for *equivalent* felony murder. See *Parks*, 510 Mich at 262-264; *Taylor*, ___ Mich at ___; slip op at 26-28. Here, that means considering whether other states authorize a sentence of mandatory LWOP for a killing committed in the perpetration of a felony but without proof of malice as defined by *Aaron*.

---

[16] The same range of penalties existed for armed robbery at the time of Langston's conviction. See MCL 750.529, as amended by 1959 PA 71 (providing that armed robbery was a felony "punishable by imprisonment in the state prison for life or for any term of years").

19

When we decided *Taylor*, Michigan was one of 17 states that mandated LWOP for equivalent premeditated first-degree murder, making it a "notable outlier at a national level . . . ." *Taylor*, ___ Mich at ___; slip op at 28. We are not aware of any states that mandate LWOP under their equivalent felony-murder laws but do not impose as harsh a penalty for premeditated murder. Indeed, at least a handful of the states cited in *Parks* and incorporated in *Taylor* do not mandate LWOP for all felony-murder convictions.[17] Therefore, even assuming that the remaining states that mandate LWOP for felony murder allow for this penalty without a showing of *Aaron*-like malice, Michigan is among no more than a dozen states that legislatively require a minimum sentence of LWOP for felony murder. Because the number of jurisdictions that mandate this sentence is significantly small, the third factor also favors a finding of gross disproportionality. See *Taylor*, ___ Mich at ___; slip op at 28 n 25.

## 4. GOAL OF REHABILITATION

The final factor, rehabilitation, is a central feature of the Michigan Constitution's proportionality test. *Parks*, 510 Mich at 265. "Indeed, it is the only penological goal enshrined in our proportionality test as a 'criterion rooted in Michigan's legal traditions' . . . ." *Id.*, quoting *Bullock*, 440 Mich at 34. Mandatory imposition of LWOP forecloses the possibility of release and does not further the goal of rehabilitation. We have repeatedly recognized as much. *Parks*, 510 Mich at 264-265 ("[I]t cannot be disputed that

---

[17] See, e.g., Arkansas, Ark Code Ann 5-10-102, 5-4-104(c)(1)(A), and 5-4-401(a)(1); Colorado, Colo Rev Stat 18-3-103 and 18-1.3-406; Minnesota, Minn Stat 609.185(a)(1)(3), 609.19, and 609.106(2); Missouri, Mo Rev Stat 565.021; New Hampshire, NH Rev Stat Ann 630:1-b.

20

the goal of rehabilitation is not accomplished by mandatorily sentencing an individual to life behind prison walls without any hope of release."); *Taylor*, ___ Mich at ___; slip op at 30-31. So has the United States Supreme Court. *Graham*, 560 US at 74 ("The penalty [of LWOP] forswears altogether the rehabilitative ideal. By denying the defendant the right to reenter the community, the State makes an irrevocable judgment about that person's value and place in society."); *Miller*, 567 US at 478 ("[T]his mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.").

Individuals convicted of felony murder before *Aaron* believed that they were condemned to die in prison and that reentry into society was unattainable. Such a sentencing scheme is not a rehabilitative one. This factor also favors a finding of gross disproportionality.

### 5. BALANCING THE *LORENTZEN-BULLOCK* FACTORS

As noted, each of the *Lorentzen-Bullock* factors weighs in favor of the conclusion that a sentence of mandatory LWOP for a pre-*Aaron* felony-murder conviction is grossly disproportionate under the circumstances that we have described. Therefore, considering these factors in their totality, we hold that such a sentence violates the Michigan Constitution's ban on cruel or unusual punishment where the jury was not instructed to find malice as defined by *Aaron*, unless the prosecution can show beyond a reasonable doubt that the jury would have found that *mens rea* had it been so instructed.

### D. STANDARD FOR DETERMINING ENTITLEMENT TO RELIEF

We next elaborate on the rationale and application of this two-part, burden-shifting test. First, consistently with MCR 6.508(D), the defendant has the initial burden to

21

establish that the jury was not instructed on—and thus made no finding on—malice as defined by *Aaron*. Unlike our recent age-based sentencing decisions, in which it could easily be discerned for whom relief was appropriate, relief under these circumstances depends on a factual inquiry that must be resolved in individual cases. This case-by-case determination is necessary because such a finding of malice may not have been absent in all pre-*Aaron* felony-murder trials. As evidence, consider the conflicting pre-*Aaron* Court of Appeals decisions that were issued about the viability of the common-law felony-murder rule. At that time, Court of Appeals panels were not required to follow the published decisions of other panels. Compare *Barbour v Dep't of Social Servs*, 172 Mich App 275, 278; 431 NW2d 482 (1988) ("Although published opinions of this Court bind lower courts, other panels of this Court constitute courts of equal dignity and are not obligated to follow the decisions of previous panels."), with MCR 7.215(J)(1) (providing with limited exceptions that "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990"). Accordingly, some pre-*Aaron* panels had concluded that the common-law felony-murder rule of malice did not exist in Michigan, see, e.g., *People v Fountain*, 71 Mich App 491, 505-506; 248 NW2d 589 (1976); *People v Wright*, 80 Mich App 172, 176; 262 NW2d 917 (1977), while others had held the opposite, see, e.g., *People v Till*, 80 Mich App 16, 29; 263 NW2d 586 (1977), rev'd in part on other grounds 411 Mich 982 (1981); *People v Butts*, 85 Mich App 435, 438; 271 NW2d 265 (1978), vacated in part 411 Mich 1041 (1981). Given this split in Court of Appeals caselaw, trial courts in some pre-*Aaron* cases

22

may have instructed juries on malice consistently with how *Aaron* would later define it.[18]

For this reason, any defendants who believe they are entitled to sentencing relief must establish, in their case, that the jury was not instructed on the types of malice outlined by *Aaron*.

If a defendant can show that their felony-murder jury conviction was reached without finding malice as defined by *Aaron*, the burden shifts to the prosecution to establish beyond a reasonable doubt that the jury would have found that the defendant acted with such malice on the basis of the evidence presented at trial. This burden-shifting process is analogous to how this issue would be addressed if it were a challenge to the conviction on the grounds of an improper jury instruction.[19] In that context, relief is not automatic but rather subject to harmless-error review. See *People v Kowalski*, 489 Mich 488, 501-502; 803 NW2d 200 (2011) ("[A]n imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights."); *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999) ("The error at issue here—a jury instruction that omits an element of the

---

[18] At the time, when a trial court was confronted with conflicting published Court of Appeals decisions on the same issue, a trial court had discretion to follow the decision that it deemed most persuasive. See *Tebo v Havlik*, 418 Mich 350, 379 n 15; 343 NW2d 181 (1984) (LEVIN, J., partially dissenting in *Tebo* and concurring in its companion case) ("A decision of the Court of Appeals is binding on the trial courts; if there are conflicting decisions, a trial court may follow the view that it finds most persuasive.").

[19] Justice ZAHRA incorrectly characterizes our opinion as "assum[ing] that defendant's jury was improperly instructed on *mens rea*." To the contrary, we are not concluding that Langston's jury was improperly instructed under the law as it existed at the time. We are merely noting that a claim of instructional error used to challenge a conviction is the closest analogue to the theory on which Langston challenges his sentence.

23

offense—differs markedly from the constitutional violations we have found to defy harmless-error review."). A jury instruction that omits an element of a crime amounts to constitutional error, *Kowalski*, 489 Mich at 503, and preserved constitutional error is grounds for reversal unless the prosecutor establishes that the error was harmless beyond a reasonable doubt, *People v Miller*, 482 Mich 540, 559; 759 NW2d 850 (2008). Therefore, as applied to the circumstances of these cases, the prosecution would have the burden to establish that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant" acted with malice as defined by *Aaron* had it been so instructed. *Neder*, 527 US at 18.

Langston argues that the amount of evidence of malice that may have been presented at trial is irrelevant to the constitutionality of the sentence. But we think our approach finds support in the United States Supreme Court's decisions in *Enmund v Florida*, 458 US 782; 102 S Ct 3368; 73 L Ed 2d 1140 (1982), and *Tison v Arizona*, 481 US 137; 107 S Ct 1676; 95 L Ed 2d 127 (1987). The defendant in the former case, Earl Enmund, was convicted of first-degree felony murder for his role as the getaway driver in an armed robbery during which a codefendant killed the victims. *Enmund*, 458 US at 785. The jury had been instructed that to convict Enmund on this charge, "the evidence must establish beyond a reasonable doubt that the defendant was actually present and was actively aiding and abetting the robbery or attempted robbery, and that the unlawful killing occurred in the perpetration of or in the attempted perpetration of the robbery." *Id*. (quotation marks and citation omitted). Although "the record supported no more than the inference that Enmund was the person in the car by the side of the road at the time of the killings, waiting to help the robbers escape," the trial court sentenced Enmund to death. *Id*. at 788. The Supreme

24

Court concluded that imposing the maximum penalty authorized by state law under these circumstances ran afoul of the Eighth Amendment's prohibition on cruel and unusual punishment. *Id*. at 797. Specifically, it held that a defendant "who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed" cannot receive the death penalty. *Id*. Because Enmund lacked the criminal culpability of a robber who kills, "his punishment must be tailored to his personal responsibility and moral guilt." *Id*. at 801. Relying on the record as construed by the state court, the Supreme Court held that the evidence showed that Enmund lacked any intent to participate in or facilitate a murder. *Id*. at 798.

Five years later, in another felony-murder case, the Court in *Tison* clarified that the Eighth Amendment permits the death penalty where the record establishes "major participation in the felony committed, combined with reckless indifference to human life . . . ." *Tison*, 481 US at 158. In that case, again relying on the facts as found by the state court, the Supreme Court concluded that the Tison brothers' participation in a fatal kidnapping and robbery was "anything but minor" and that the record "support[ed] a finding that they both subjectively appreciated that their acts were likely to result in the taking of innocent life." *Id*. at 152.

*Enmund* and *Tison* support our determination that evidence of malice can be relevant to the constitutionality of a sentence. In both cases, there was no dispute that the *jury instructions* authorized a guilty verdict of felony murder based on the defendants' participation in the predicate felony alone and without showing that they intended or foresaw that a killing would occur. See *Enmund*, 458 US at 785; *Tison*, 481 US at 141-

25

142. But the Supreme Court did not consider the constitutional question to turn on this ground. Instead, the dispositive question was whether the evidence at trial of the defendants' intent and participation in the crime justified the harshest penalty. While *Enmund* and *Tison* involved capital punishment, their reasoning applies by analogy to LWOP—the maximum permissible punishment under Michigan law. See *Graham*, 560 US at 69 ("The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable."). A defendant's mandatory LWOP sentence remains valid and constitutionally permissible if the prosecution establishes beyond a reasonable doubt that the defendant acted with malice as defined by *Aaron*, thus distinguishing between those defendants who clearly possessed the requisite intent and those who did not.

While Langston asserts, and Chief Justice CAVANAGH agrees, that the failure to instruct the jury on malice as defined by *Aaron* is alone sufficient to establish entitlement to relief, we do not believe that a categorical holding is constitutionally compelled under the unique circumstances of this case. Our recent grants of categorical relief in *Parks*, *Stovall*, *Taylor*, and *Czarnecki* are distinct in that their holdings rested on the fact that juveniles and late adolescents are "likely to be biologically incapable of full culpability." *Parks*, 510 Mich at 259. See also *Graham*, 560 US at 77 (doubting that "a case-by-case proportionality approach could with sufficient accuracy distinguish the few incorrigible juvenile offenders from the many that have the capacity for change"). This feature does not apply to the legal issue in this case. That is because defendants convicted of pre-*Aaron* felony murder do not represent a cohesive class the way juvenile and late adolescent offenders do. By distinguishing between those defendants who clearly acted with malice

26

as defined by *Aaron* and those who did not, our approach accounts for differences in the gravity of the offense as reflected in the first *Lorentzen-Bullock* factor.[20]

Langston also attacks the case-by-case consideration of malice on a different ground. Our test would violate the Sixth Amendment, he says, by requiring trial judges to determine whether there was sufficient proof of malice as defined by *Aaron*. Relying on this Court's decision in *People v Skinner*, 502 Mich 89; 917 NW2d 292 (2018), we disagree. The Sixth Amendment, as applied to the states by the Fourteenth Amendment, provides several rights to the accused, including the right to be tried by an impartial jury. Interpreting this provision, the United States Supreme Court has held that "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham v California*, 549 US 270, 281; 127 S Ct 856; 166 L Ed 2d 856 (2007). See also *Apprendi v New Jersey*, 530 US 466, 489; 120 S Ct 2348; 147 L Ed 2d 435 (2000); *Ring v Arizona*, 536 US 584, 602; 122 S Ct 2428; 153 L Ed 2d 556 (2002).

---

[20] Chief Justice CAVANAGH relies on language from *Bullock* explaining that "[i]t would be inconsistent with the most basic norms of our system of justice to treat these defendants . . . as guilty of a crime of which they were never convicted . . . ." *Bullock*, 440 Mich at 37-38 n 19. We agree with this principle. But the context in which this statement arose in *Bullock* involved a discussion of whether a defendant who was charged and convicted of a cocaine possession offense could be considered guilty of a more serious offense involving the intent to sell or distribute cocaine when assessing the facial proportionality of the penalty of LWOP. Here, by contrast, Langston and other similarly situated defendants were convicted of first-degree felony murder, convictions that we do not disturb. Thus, nothing in this opinion or the framework we announce would treat any defendants as "guilty of a crime of which they were never convicted." *Id*.

27

In *Skinner*, we considered whether MCL 769.25,[21] enacted in the wake of *Miller*, violated the Sixth Amendment by allowing a judge to decide whether to impose LWOP, rather than a jury basing its decision on a finding beyond a reasonable doubt. *Skinner*, 502 Mich at 96-97. In resolving this issue, the pertinent inquiry was "whether MCL 769.25 requires the trial court to find an additional fact before it can sentence a juvenile to life without parole or whether the jury's verdict alone exposes a juvenile to a life-without-parole sentence." *Id*. at 112. *Skinner* held that MCL 769.25 "does not require the trial court to make any particular factual finding" before imposing an LWOP sentence. *Id*. at 119. Even so, because an LWOP sentence is justified by the jury's verdict of first-degree murder alone, "additional fact-finding by the court is not prohibited by the Sixth Amendment." *Id*. at 118. "In other words, the Sixth Amendment only prohibits fact-finding that *increases* a defendant's sentence; it does not prohibit fact-finding that *reduces* a defendant's sentence." *Id*. at 115-116.

Following the reasoning of *Skinner*, the test set forth in this opinion does not run afoul of the Sixth Amendment. First, the LWOP sentences imposed on individuals convicted of pre-*Aaron* felony murder were justified by the jury's verdicts alone. As recognized by *Aaron*, at the time of trials occurring before that decision, the common-law rule that malice could be formed with an intent to commit the underlying felony alone remained the law in Michigan. *Aaron*, 409 Mich at 727-729. *Aaron* expressly declined to grant new trials to individuals convicted of first-degree felony murder under this common-

---

[21] MCL 769.25 outlines procedures to determine the appropriate sentence for juvenile offenders and late adolescents who are convicted of certain enumerated crimes that otherwise carry a penalty of mandatory LWOP. See *People v Taylor*, 510 Mich 112, 130; 987 NW2d 132 (2022).

law theory. And our decision today does not disturb the conviction obtained in this case or any other pre-*Aaron* case. Because the mandatory statutory penalty for pre-*Aaron* felony murder was LWOP, a jury's verdict of guilty of felony murder justified that sentence. Accordingly, any fact-finding by a trial court under the circumstances of this case would not *increase* the sentence otherwise justified by the jury's verdict. The sentence of LWOP would either remain the same or be reduced to parolable life, as we will discuss in Part V. As *Skinner* makes clear, the Sixth Amendment does not prohibit such fact-finding. See *Skinner*, 502 Mich at 115-116.

### E. *PEOPLE v HALL*

We next consider whether our decision today requires us to overrule *Hall*. In that case, this Court rejected, in cursory fashion, the defendant's argument that mandatory LWOP for felony murder was cruel and/or unusual punishment under the United States and Michigan Constitutions. *Hall*, 396 Mich at 657-658. Given that this case involves the imposition of mandatory LWOP for pre-*Aaron* felony murder, the question arises as to whether *Hall*'s state constitutional holding should be overruled. In keeping with our reasoning in *Parks* and *Taylor*, we conclude that it is unnecessary to formally overrule *Hall*. See *Parks*, 510 Mich at 255 n 9; *Taylor*, ___ Mich at ___; slip op at 36. While we again recognize that *Hall*'s remaining viability may be limited, "[w]e do not disturb, at this time, *Hall*'s holding that Const 1963, art 1, § 16 permits a mandatory punishment of LWOP for defendants convicted of first-degree murder, so long as the defendant was at least 21 years of age at the time of the offense" and not within the class of offenders entitled to relief pursuant to the framework in this opinion. *Taylor*, ___ Mich at ___; slip op at 36.

29

Because our holding here implicates a relatively small subset of sentences for felony murder, we have no occasion to address the facial constitutional challenge at issue in *Hall*. In other words, we are not addressing whether mandatory LWOP for felony murder is "unconstitutional in all its applications," as that issue is not before us. *Johnson v VanderKooi*, 509 Mich 524, 545; 983 NW2d 779 (2022).

## V. REMEDY

Lastly, we consider what remedy is required if any defendants' sentences of mandatory LWOP are held to be constitutionally invalid. Langston argues that the case should be remanded for resentencing to an authorized sentence for either manslaughter (15 years) or the underlying felony of armed robbery (term of years or parolable life). He asserts that these are the only plausibly constitutionally proportionate remedies.

Firstly, we must reject the view that any defendant who is entitled to relief should be resentenced on some lesser charge than felony murder. As noted earlier, our opinion does not disturb the felony-murder *convictions* of Langston or any other similarly situated offender. Accordingly, it would be improper to order resentencing on a lesser offense when the conviction remains valid. Instead, the difficult question we must answer is what remedy to provide where a defendant's mandatory LWOP sentence for first-degree felony murder is unconstitutionally disproportionate.

We find our discussion on remedy from *Bullock* most analogous to the situation at bar. There, this Court held that a sentence of mandatory LWOP for possession of 650 or more grams of cocaine was "so grossly disproportionate as to be 'cruel or unusual'" punishment under Const 1963, art 1, § 16. *Bullock*, 440 Mich at 37. In determining the

30

proper remedy, the Court highlighted "three aspects to the severity of the penalty at issue: (1) its length (life); (2) its mandatory character, i.e., the absence of individualized consideration for each defendant at the sentencing stage; and (3) the absence of any possibility of individualized parole consideration for each defendant." *Id*. at 42. The Court concluded that "the most appropriate remedy under the circumstances" was to strike down the no-parole aspect of the sentence. *Id*. Thus, any defendants who had been sentenced to mandatory LWOP for the same offense and who had served at least 10 years' imprisonment became immediately eligible for parole consideration. *Id*.

We conclude that striking the no-parole element is the most appropriate remedy under these circumstances for any defendants whose sentences are deemed constitutionally invalid. This remedy balances our judicial obligation to right the constitutional wrong with the recognition that the choice of available criminal punishment is generally within the Legislature's purview. Compare *Parks*, 510 Mich at 256 ("We cannot shirk our duty and defer to the Legislature's choice of punishment when its choice is offensive to our Constitution."), with *People v Hegwood*, 465 Mich 432, 437; 636 NW2d 127 (2001) ("[A] judge is constrained by the Legislature's determination of the maximum penalty and, if applicable, the minimum penalty."). It also respects the fact that the first-degree murder statute, for pre- and post-*Aaron* offenders, has mandated LWOP for defendants convicted of felony murder after the fact-finder has determined that the defendant acted with malice. Striking the portion of the sentence that barred parole consideration as applied to qualifying

31

pre-*Aaron* offenders also "requires the least judicial rewriting of the statute . . . ." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015).[22]

Although Langston at times appears to concede that parolable life is a constitutionally permissible remedy, he also suggests that parolable life might not remedy the cruel or unusual nature of the sentence because of our decision in *Stovall*.[23] We held in *Stovall* that a parolable life sentence for second-degree murder committed by a juvenile offender was cruel or unusual punishment. *Stovall* is distinguishable because much of its reasoning rested on the fact that the defendant was 17 years old and faced a longer possible penalty (life) than many juveniles convicted of a more serious offense (first-degree murder) who received a term-of-years sentence after *Miller*. In this case, any pre-*Aaron* offender who receives the remedy of parolable life will become immediately eligible for parole,[24] a more favorable situation than the one facing all others who commit felony murder at 21

---

[22] When Langston was convicted, Michigan's first-degree murder statute mandated "life" imprisonment but did not contain the "without eligibility for parole" language that exists in the statute today. Nonetheless, the parole laws at the time made clear that individuals sentenced to life for first-degree murder were ineligible for parole. See MCL 791.234, as amended by 1958 PA 210 ("Any convict who now is . . . under sentence for life or for any term of years, *other than those so sentenced for life for murder in the first degree*, and who shall have served 10 calendar years of such sentence, shall be subject to the authority and jurisdiction of the parole board and may be released on parole in the discretion of the parole board . . . .") (emphasis added).

[23] Notably, in a supplemental brief filed after the first oral argument in this Court, Langston stated, without reservation, that resentencing to parolable life was a constitutionally permissible remedy.

[24] In most cases, offenders sentenced to parolable life for an offense committed before October 1, 1992, become eligible for parole consideration after serving 10 years of their sentence. MCL 791.234(7)(a).

years of age or older, who remain subject to mandatory LWOP pursuant to MCL 750.316(1)(b).

Regarding Langston's argument that a term-of-years sentence would be an appropriate remedy here, the issue is complicated by the fact that all pre-*Aaron* defendants were sentenced before the existence of judicial or legislative sentencing guidelines.[25] At that time, "there were merely statutory minimums and maximums for certain offenses, and a trial court could sentence a convicted person to any period within this statutory range," except when the Legislature prescribed a mandatory sentence for certain offenses, like LWOP for first-degree murder. *People v Babcock*, 469 Mich 247, 253 & n 4; 666 NW2d 231 (2003). For this reason, we do not see a lawful basis to order resentencing to an undefined term of years, as the absence of any sentencing guidelines for pre-*Aaron* first-degree felony murder would give wide discretion to the trial court. Likewise, the term-of-years sentences available under MCL 769.25 apply only to juveniles and late adolescents convicted of first-degree murder who are not subject to mandatory LWOP because of their age at the time of the offense. MCL 769.25(1); *Parks*, 510 Mich at 267; *Taylor*, ___ Mich at ___; slip op at 37-38. We therefore believe that the appropriate remedy here is to follow this Court's path in *Bullock* and strike the unavailability of parole for any defendants who are entitled to relief.[26]

---

[25] The judicial sentencing guidelines were enacted by administrative order of this Court in 1983. *Hegwood*, 465 Mich at 438. In 1999, the legislative sentencing guidelines took effect. *Id*. at 438-439.

[26] As noted in *Bullock*, "the Legislature remains free to modify the statutory scheme in response to our decision today . . . ." *Bullock*, 440 Mich at 43 n 26. The Legislature did so in response to the *Miller* decision when it enacted MCL 769.25 and MCL 769.25a.

## VI.  APPLICATION

In this case, we first consider whether the jury at Langston's 1976 trial was instructed on malice consistently with *Aaron*.  Recall that the jury received the following instructions on the aiding-and-abetting theory necessary to find him guilty of felony murder:

> First, that the defendant intended to commit the crime of robbery at the time that he allegedly aided and abetted or encouraged Ronald Wilson;

> Second, that the defendant performed acts or gave encouragement which in fact did aid, or abet, or assist in the commission of the crime of robbery;

> Third, that the crime of murder occurred as a result of this robbery;

> Fourth, that this murder which occurred was fairly within the scope of a criminal enterprise and it might have been expected to happen in the course of committing this robbery with a pistol.

*Aaron* held that "malice is the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm."  *Aaron*, 409 Mich at 728.  The jury was not instructed that it could find malice by intent to kill or cause great bodily harm.  The closest the instructions came to articulating *Aaron*-like malice was the fourth element: "that this murder which occurred was fairly within the scope of a criminal enterprise and it might have been expected to happen in the course of committing this robbery with a pistol."  But a significant gap still exists between this instruction and the "wanton and willful" formulation of malice.  Proving that a murder "might have been expected to happen" during a robbery is vague and passive; the instruction did not even require the jury to find that *Langston* should have known that a murder might occur.  Establishing that a person acted

34

with a "wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm" presents a heavier burden of proof of intent, akin to criminal gross negligence. See *People v Fredell*, 516 Mich 1, 14; ___ NW3d ___ (2024); *People v Feezel*, 486 Mich 184, 195-196; 783 NW2d 67 (2010). Just as the Court of Appeals originally held on direct appeal, see *Langston*, 86 Mich App at 660-661, Langston has shown that his jury was not instructed on malice as later defined in *Aaron*.[27]

Accordingly, the burden shifts to the prosecution to prove beyond a reasonable doubt that a rational jury would have found that Langston acted with malice as defined by *Aaron* had it been so instructed. Because the prosecution has not yet had an opportunity to meet its burden under the test we announce today, we vacate the trial court's order denying sentencing relief and remand for further proceedings.

## VII. CONCLUSION

We hold that mandatory LWOP for pre-*Aaron* felony murder constitutes cruel or unusual punishment under Article 1, § 16 of the Michigan Constitution if two conditions are met. The defendant must first establish that the jury was not instructed on malice as defined by *Aaron*. If so established, the burden shifts to the prosecution to show beyond a reasonable doubt, on the basis of the evidence presented at trial, that a jury would have found that the defendant acted with malice as defined by *Aaron* had it been so instructed. If the prosecution cannot meet its burden, the remedy is to strike the no-parole aspect of

---

[27] The prosecution also conceded at oral argument that Langston has satisfied this first step.

the LWOP sentence, which would render any defendant who qualifies eligible for parole consideration.

We vacate in part the trial court's order denying relief from judgment, and we remand this case to the Van Buren Circuit Court for further proceedings consistent with this opinion. We direct the trial court to expedite proceedings on remand.

Kyra H. Bolden
Richard H. Bernstein
Elizabeth M. Welch
Noah P. Hood

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                        No. 163968

EDWIN LAMAR LANGSTON,

      Defendant-Appellant.

_____

CAVANAGH, C.J. (*concurring in part and dissenting in part*).

I join the Court's majority opinion in most respects. I agree that defendant has shown "good cause" as required under MCR 6.508(D)(3)(a) and that a sentence of life in prison without the possibility of parole (LWOP) imposed for a felony-murder conviction where a jury made no finding of malice as the term was defined in *People v Aaron*, 409 Mich 672, 728; 299 NW2d 304 (1980), is grossly disproportionate and thus "invalid" for purposes of the "actual prejudice" requirement of MCR 6.508(D)(3)(b)(iv).[1] However, I part ways with the majority when it concludes that the unconstitutional nature of defendant's sentence can be corrected if the prosecution is given an opportunity to prove

_____

[1] I further agree with the majority that, consistent with the burdens associated with MCR 6.508(D)(3), it is the defendant seeking relief from judgment who bears the burden of demonstrating that their jury was not instructed on and did not find malice as we conceptualize it today (i.e., intent to kill, intent to do great bodily harm, or intent to act with wanton and willful disregard of the likelihood that the natural tendency of such behavior was to cause death or great bodily harm). If a pre-*Aaron* jury was instructed and asked to find malice as we think of it in the post-*Aaron* landscape, then the defendant is not entitled to relief from judgment under today's opinion.

to a judge that the jury would have found that the defendant acted with intent consistent with the post-*Aaron* formulation of malice. In accordance with the remedy applied in *People v Bullock*, 440 Mich 15, 42; 485 NW2d 866 (1992), I would have struck the no-parole aspect of defendant's sentence and ordered that he be resentenced to life *with* the possibility of parole. Because I disagree with the majority's chosen remedy, I must respectfully dissent on this basis.

I first reiterate that I fully concur with the majority that the lack of a malice finding associated with defendant's pre-*Aaron* felony-murder LWOP sentence is what makes his sentence unusually excessive and grossly disproportionate under Const 1963, art 1, § 16. Persons convicted of a crime with a conceptualization of malice inconsistent with that adopted in *Aaron* were not found by a jury beyond a reasonable doubt to have acted with the *mens rea* that makes the crime of first-degree murder so grave. It would be "profoundly unfair to impute full personal responsibility and moral guilt" commensurate with the most severe punishment for a conviction that required no proof of intent to kill, intent to do great bodily harm, or the wanton and willful disregard for human life. *Bullock*, 440 Mich at 39. It is this abhorrent degree of *mens rea* that supports the imposition of the harshest of punishments, mandating "automatic, permanent removal from society." *People v Parks*, 510 Mich 225, 260; 987 NW2d 161 (2022). As the majority recognizes, only a select few states impose mandatory LWOP for felony murder, and presumably even fewer for felony murder that lacks a specific finding of malice consistent with the type we recognized in *Aaron*. And, finally, mandatory LWOP is totally inconsistent with the goal of rehabilitation. Therefore, I agree with the majority that defendant's sentence of LWOP

2

imposed for a conviction not based on a finding of post-*Aaron* malice is unconstitutional under the *Bullock* test and Const 1963, art 1, § 16.

Instead of granting defendant relief on this basis, however, the majority reasons that the prosecution should be given the opportunity to show beyond a reasonable doubt that a jury *would have* found that defendant acted with malice based on evidence that was presented at his trial.[2] The majority reasons that determining defendant's personal responsibility and moral guilt should be left to a judge considering the cold record of a trial that took place more than 50 years ago. If the prosecutor can convince this judge that the record demonstrates malice, then the LWOP sentence may be upheld as constitutional. The majority says that this is "analogous to how this issue would be addressed if it were a challenge to the conviction on the grounds of an improper jury instruction" and also concludes that this remedy finds support in two United States Supreme Court decisions: *Enmund v Florida*, 458 US 782; 102 S Ct 3368; 73 L Ed 2d 127 (1982), and *Tison v Arizona*, 481 US 137; 107 S Ct 1676; 95 L Ed 2d 127 (1987).

As to the former point, I am not persuaded by the majority's turn to the harmless-error standard as it applies in instances where a jury instruction is omitted. See *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011) ("Instructional errors that omit an element of an offense . . . do 'not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' "), quoting *Neder v United States*, 527 US 1; 119 S Ct 1827; 144 L Ed 2d 35 (1999) (emphasis omitted). Here, no

---

[2] "Because the jury is the sole judge of *all* the facts, it can choose, without any apparent logical basis, what to believe and what to disbelieve. What may appeal to the judge as 'undisputed' need not be believed by a jury." *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980) (quotation marks and citation omitted).

3

element was omitted; defendant's conviction for pre-*Aaron* felony murder was based on a jury finding beyond a reasonable doubt with respect to all the elements required at that time. More importantly, *Neder*, 527 US at 19, makes clear that "where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding," the error will *not* be deemed harmless. With this in mind, I find application of the harmless-error doctrine unfair in the present situation. A defendant who did not know that this iteration of malice was an element of the crime had no motivation to dispute malice or put forth evidence in opposition to evidence that would support a finding of malice. Accordingly, I am unconvinced that the harmless-error standard of review is so easily transferable across two totally different issues.

The majority also finds support for their chosen remedy in two Eighth Amendment death penalty cases, *Enmund* and *Tison*. Those cases "explore[] the degree of culpability necessary for the imposition of capital punishment in cases involving felony-murder convictions." *Gilson v Simmons*, 520 F3d 1196, 1212 (CA 10, 2008). Taken together, both cases require evidence of a certain level of culpability or the death sentence imposed will be ruled unconstitutional. The United States Supreme Court has concluded that it is not necessary for a jury to make the requisite findings based on proof beyond a reasonable doubt. *Cabana v Bullock*, 474 US 376, 386; 106 S Ct 689; 88 L Ed 2d 704 (1986) ("[T]he decision whether a sentence is so disproportionate as to violate the Eighth Amendment in any particular case, like other questions bearing on whether a criminal defendant's constitutional rights have been violated, has long been viewed as one that a trial judge or an appellate court is fully competent to make."), overruled in part on other grounds *Pope v*

*Illinois*, 481 US 497, 500 (1987); *Walton v Arizona*, 497 US 639; 110 S Ct 3047; 111 L Ed 2d 511 (1990) (same).

If the Court were working on a blank slate, I might be persuaded to follow the lead of the United States Supreme Court's Eighth Amendment death-penalty jurisprudence.[3] However, this Court already has a blueprint for the appropriate remedy from its seminal case on cruel or unusual punishment, *Bullock*, 440 Mich at 39. In *Bullock*, like here, the intent element of the crime at issue (intent to possess more than 650 grams of cocaine) was not tailored to the harshness and severity of the corresponding sentence (LWOP). This Court acknowledged that the circumstances of the crime—possessing such a large quantity of cocaine—would likely support an inference that the defendants intended to distribute or sell the illegal drugs and intimated that such an intent might render the sentence constitutionally proportionate. *Id*. at 37 n 19 ("[I]t is entirely possible that the evidence in this case *would have been* sufficient to support convicting both defendants of possession with intent to sell or deliver."). Nonetheless, because no jury had been asked to draw such

---

[3] But perhaps not. While *Enmund*, *Tison*, and *Cabana* remain good law, these decisions have faced increasing scrutiny in light of the United States Supreme Court's expanding Sixth Amendment jurisprudence in cases such as *Ring v Arizona*, 536 US 584; 122 S Ct 2428; 153 L Ed 2d 556 (2002), and *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000). See, e.g., *Gongora v Thaler*, 710 F3d 267, 296 (CA 5, 2013) (Owen, J., dissenting) (acknowledging that *Cabana* remains good law but calling it "highly questionable" in light of *Ring*, *Apprendi*, and the like); *In re Coley*, 55 Cal 4th 524, 566; 283 P3d 1252 (2012) (Liu, J., concurring); Stevenson, *The Ultimate Authority on the Ultimate Punishment: The Requisite Role of the Jury in Capital Sentencing*, 54 Ala L Rev 1091, 1132 (2003); Comment, *See No Evil, Hear No Evil, Speak No Evil: An Argument for a Jury Determination of the* Enmund/Tison *Culpability Factors in Capital Felony Murder Cases*, 27 St Louis U Pub L Rev 235, 259-263 (2007); Russell, *Jury Sentencing and Juveniles: Eighth Amendment Limits and Sixth Amendment Rights*, 56 BC L Rev 553 (2015).

an inference, this Court reasoned that the defendants "must be deemed innocent of any such intent for purposes of analyzing the facial proportionality of the disputed penalty to the offense for which it is imposed" on the ground that "[i]t would be inconsistent with the most basic norms of our system of justice to treat these defendants . . . as guilty of a crime of which they were never convicted . . . ." *Id*.

I would follow the example set by *Bullock*. Just as this Court concluded in *Bullock* that it would be unfair to treat the defendants in that case as if they intended to sell or distribute cocaine when they were never convicted of such a crime, in my view it would be unfair to treat defendant in this case as if he intended to kill, intended to do great bodily harm, or acted with wanton and willful recklessness where no jury found him guilty of those elements. I would not ask a judge to retroactively decide whether a jury "would have" found that defendant acted with post-*Aaron* malice.

I recognize that this is a unique case, and I do not fault the majority for looking outside of our state jurisprudence for potential guidance. However, where *Bullock* provides a workable remedy, I would not search other areas of the law, including the harmless-error standard of review applicable to jury instruction omissions or Eighth Amendment capital-sentencing jurisprudence, to create a new and unnecessary framework. See *United States v Morrison*, 449 US 361, 364; 101 S Ct 665; 66 L Ed 2d 564 (1981) ("[R]emedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."). Instead, if a defendant convicted of felony murder pre-*Aaron* could prove that their jury made no finding that they intended to kill, intended to do great bodily harm, or acted wantonly and willfully, then I would order the trial court to strike "without parole" from their sentence and enter an amended

6

judgment. Nothing more. Because I disagree with the majority's chosen remedy, I respectfully dissent.

Megan K. Cavanagh

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                                                    No. 163968

EDWIN LAMAR LANGSTON,

      Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

      The Court vacates the trial court's order denying a motion for relief from judgment in a case in which defendant was convicted of felony murder nearly 50 years ago. The Court does this by effectively applying retroactively our decision in *People v Aaron*,[1] even though the Court expressly announced in *Aaron* that the decision would have prospective application only.[2] The Court reaches this result not by reviewing defendant's conviction, but rather by purporting to review his sentence, taking this opportunity to again expand the constitutional protections afforded under Michigan's prohibition against cruel or unusual punishment. In doing so, the Court accepts defendant's invitation to repackage his previously raised attack on his conviction as an instructional claim in order to avoid the procedural bar that clearly applies, bending over backwards to create a constitutional remedy to correct a perceived wrong. A judgment of conviction and sentence that has

_____

[1] *People v Aaron*, 409 Mich 672; 299 NW2d 304 (1980).

[2] *Id*. at 734.

survived direct review is entitled to a strong presumption of finality. The state's interest in closing disputes is at its highest when the state invokes its power to adjudge guilt and impose punishment in a criminal proceeding. Finality is not a mere technicality, but a core value of our criminal justice system upon which the legitimacy of the criminal law depends. And while the state's commitment to finality in criminal jurisprudence is not absolute, defendant has failed to establish a right to relief under the narrow exceptions to finality provided under Michigan's court rules.[3] Because this Court expressly concluded that *People v Aaron* should have prospective effect only, and because defendant has failed to establish good cause to merit relief under MCR Subchapter 6.500, I dissent.

## I. FACTS & PROCEDURAL HISTORY

In 1976, a jury convicted defendant of felony murder for his role in aiding and abetting Ronald Wilson in an armed robbery of a grocery store during which Wilson shot and killed one of the store owners, Arretta Ingraham. Defendant was sentenced to mandatory life imprisonment without the possibility of parole (LWOP). On direct appeal, defendant argued that the trial court had improperly instructed the jury to decide whether the killing occurred within the scope of the criminal enterprise of robbery with a pistol, and if defendant aided or abetted in that criminal enterprise, then defendant could be found guilty of felony murder. The instruction was consistent with the common-law felony-murder rule, which provides that "once a homicide in the course of a felony is proven, . . . a murder has been established and the first-degree murder statute then becomes applicable."[4]

---

[3] See generally MCR Subchapter 6.500.

[4] *Aaron*, 409 Mich at 721-722.

Defendant's direct appeal presented a close question, as different panels of the Court of Appeals split on whether Michigan caselaw clearly embraced the common-law felony-murder rule. On direct appeal a divided panel of the Court of Appeals reversed defendant's conviction. The majority opinion held that the jury instructions failed to convey "that to be liable for murder an accomplice to robbery must have acted with the intent to kill or in reckless disregard of a known and high degree of risk that death or serious bodily harm might occur."[5] The prosecution appealed to this Court, which held defendant's direct appeal in abeyance[6] for the resolution of three cases in which this Court granted leave to appeal: *People v Aaron; People v Thompson;* and *People v Wright* (referred to collectively in the singular as *People v Aaron*).[7] Leave was granted in the latter two cases to consider the "lack of an instruction on the requirement for finding malice in a felony-firearm situation."[8] In *Aaron* itself, leave was granted "to consider whether defendant's conviction of first-degree murder could be reduced to second-degree murder where the jury was instructed only on felony murder."[9]

In 1980, this Court issued its opinion in *Aaron*, which reversed the defendants' convictions and remanded for new trials in all three of the cases before the Court.[10] *Aaron*

---

[5] *People v Langston*, 86 Mich App 656, 660; 273 NW2d 99 (1978), rev'd 320 NW2d 53 (1982).

[6] See *Langston*, 320 NW2d at 53 (1982).

[7] *Aaron*, 409 Mich 672.

[8] *Id*. at 689 (quotation marks and citation omitted).

[9] *Id*.

[10] *Id*. at 734.

3

held that the element of malice required to convict a defendant of felony murder must be established by proof of intent to kill, intent to inflict great bodily harm, or "a wanton and willful disregard of the likelihood that the natural tendency of [the defendant's] behavior is to cause death or great bodily harm."[11] The *Aaron* Court explained that although Michigan had "never specifically adopted"[12] the common-law felony-murder doctrine, which "define[d] malice as the intent to commit the underlying felony,"[13] Michigan courts had also not "specifically abrogate[d]" the doctrine, and it thus "remain[ed] the law in Michigan."[14] In light of Michigan cases that had already "significantly restricted" the doctrine, the *Aaron* Court was persuaded that the doctrine should be abolished.[15]

While one could have fairly concluded that defendant would receive the same relief afforded to the *Aaron* defendants, that was not to be the case. The *Aaron* Court expressly held that its decision "shall apply to all trials in progress and those occurring after the date of this opinion."[16] Since defendant had already been convicted of felony murder, this Court reinstated his conviction after *Aaron* was issued. Three justices would have granted defendant's application to address the retroactivity of *Aaron*, citing Justice LEVIN's

---

[11] *Id*. at 733.

[12] *Id*. at 722.

[13] *Id*. at 727.

[14] *Id*. at 723.

[15] *Id*. at 723-727.

[16] *Id*. at 734.

dissenting statement in *People v Lonchar*.[17]  In Justice LEVIN's view, *Aaron*'s statement regarding retroactivity "[did] not . . . expressly reject application of the *Aaron* decision in cases where the trials had already been concluded.  What was *not* said reflected a deliberate decision to avoid foreclosing some degree of retroactive application and to leave the resolution of that question for another day."[18]  But Justice LEVIN's view did not prevail, and defendant's direct review of his conviction and sentence was final.

Defendant sought collateral review of his case by filing a motion for relief from judgment in 1992, but his motion was denied.  He attempted to file another motion for relief from judgment in 2003.  Apparently, that motion failed to comply with procedural filing requirements, and the trial court returned the submission without filing it.

In 2020, defendant filed another motion for relief from judgment, which is currently before this Court.  Defendant argues that his felony-murder conviction violated due process and that his life sentence for this crime constituted cruel or unusual punishment because he had been convicted without a finding of malice as currently defined by *Aaron*.  The trial court denied relief, ruling that it was bound to follow the decision in *Aaron* regarding the prospective effect of the decision and was bound to follow *People v Hall*,[19] which in 1976 held that LWOP did not constitute cruel or unusual punishment.  The Court of Appeals

_____

[17] Specifically, the order language indicated that Justice LEVIN would have granted leave to appeal to consider *Aaron*'s retroactivity, and Justice KAVANAGH concurred with Justice LEVIN.  *Langston*, 320 NW2d at 53, citing *People v Lonchar*, 411 Mich 923, 925 (1981) (LEVIN, J., dissenting).  Justice RYAN dissented separately, stating that he would have granted the application to address "Parts I, III, and V of [Justice LEVIN's] statement of dissent in [*Lonchar*]."  *Langston*, 320 NW2d at 53 (RYAN, J., dissenting).

[18] *Lonchar*, 411 Mich at 925.

[19] *People v Hall*, 396 Mich 650; 242 NW2d 377 (1976).

5

denied defendant's delayed application for leave to appeal.[20]  Defendant applied for leave to appeal in this Court, which granted the application on March 28, 2025.[21]

## II.  MOTION FOR RELIEF FROM JUDGMENT

The trial court properly held that defendant's claim was procedurally barred.  First, the trial court could have dismissed defendant's motion pursuant to MCR 6.508(D)(2).  MCR 6.508(D) provides that "[t]he defendant has the burden of establishing entitlement to the relief requested.  The court may not grant relief to the defendant if the motion . . . (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter . . . ."

In granting defendant relief, the Court holds in part "that mandatory LWOP for pre-*Aaron* felony murder constitutes cruel or unusual punishment under Article 1, § 16 of the Michigan Constitution if two conditions are met.  The defendant must first establish that the jury was not instructed on malice as defined by *Aaron*."  A fundamental problem with the majority's holding is its assumption that defendant's jury was improperly instructed on *mens rea*.  This Court's holding in *Aaron* was limited.  *Aaron* held that, *going forward*, the element of malice required to convict a defendant of felony murder must be established by proof of intent to kill, intent to inflict great bodily harm, or wanton and willful disregard of the likelihood that the natural tendency of one's behavior is to cause death or great bodily harm.  The most telling indicator that defendant is not entitled to relief is that the Court

---

[20] *People v Langston*, unpublished order of the Court of Appeals, entered December 2, 2021 (Docket No. 358537).

[21] *People v Langston*, ___ Mich ___; 18 NW3d 296 (2025).

6

reinstated defendant's felony-murder conviction after he specifically claimed on appeal that his jury had been improperly instructed. By announcing that *Aaron* applied prospectively only, *Aaron* held that instructional errors claimed by those defendants whose cases were held in abeyance for a resolution in *Aaron*, including defendant, did not entitle them to relief.

Nearly 50 years after *Aaron*, defendant now argues he is entitled to relief based on this same alleged instructional error. His argument is essentially that the jury might not have found malice as described by *Aaron*, so his conviction is not truly for first-degree murder and his corresponding mandatory sentence of LWOP is cruel or unusual. But the predicate grounds of defendant's direct appeal challenging his conviction and his current motion for relief from judgment both stem from the same alleged instructional error. Defendant's challenge to the constitutionality of his LWOP sentence is little more than a repackaged attack on the validity of his conviction. The majority is simply rewriting history to afford defendant relief for the same error that this Court plainly considered and long ago rejected. Another way to view the majority opinion is that it is correcting a perceived wrong in *Aaron*'s retroactivity decision, thereby providing defendants convicted before *Aaron* with a path to judicially commute their sentences. A claim steeped in equity and fairness over a nearly 50-year-old conviction and sentence is a dubious basis upon which to interpret Michigan's Constitution.[22]

Moreover, even if we were to ignore the fact that defendant raised this instructional error on direct appeal, defendant is barred from relief under the current motion from relief

---

[22] I am unaware of any other states that bar a sentence of LWOP on constitutional grounds for adults convicted of felony murder.

7

from judgment because he failed to present this issue in his prior motion for relief from judgment.

MCR 6.508(D) provides, in part, that

[t]he defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

* * *

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief . . . .

Defendant's narrative can only be explained as an attempt to argue that he did not agree to the armed robbery or foresee that Wilson's armed robbery would lead to Ingraham's death. In short, defendant argues that he should not be held individually responsible for Wilson's actions.

If this argument seems familiar, perhaps it is because it tracks the very language the *Aaron* Court used to justify its decision to abolish the common-law felony-murder rule:

In the past, the felony-murder rule has been employed where unforeseen or accidental deaths occur and where the state seeks to prove vicarious liability of co-felons. In situations involving the vicarious liability of co-felons, the individual liability of each felon must be shown. It is fundamentally unfair and in violation of basic principles of individual criminal culpability to hold one felon liable for the unforeseen and unagreed-to results of another felon.[23]

---

[23] *Aaron*, 409 Mich at 731.

8

While *Aaron* addressed the substantive elements of felony murder, *Aaron* clearly contemplated the ramifications of its holding in terms of one's individual culpability for the unforeseen and unagreed-to results of an accomplice. The *Aaron* Court identified certain cases that it found particularly problematic: cases where unforeseen or accidental deaths occur; cases where the state seeks to prove the vicarious liability of co-felons; and cases where the death was purely accidental, in which the application of the felony-murder doctrine is unjust and should be precluded.[24] The first circumstance is precisely the argument that defendant now presents to this Court, and it is an argument that could and should have been raised in his earlier motion for relief from judgment.

The majority opinion wrongly concludes that defendant has established good cause to file the current motion. The majority points to inapplicable cases involving the sentencing of juveniles for serious offenses. The majority even correctly acknowledges that "these cited cases are not dispositive of the issue before us[.]" The majority's claim that there is "a consistent trend away from the mandatory imposition of LWOP for first-degree murder when that punishment is not 'tailored to a defendant's personal responsibility and moral guilt' "[25] is irrelevant, if not outright dubious.

Further, and more importantly, *Aaron* cited the same principles concerning a defendant's personal responsibility and moral guilt that are applicable when an accomplice demonstrates that they did not agree to the principal's armed robbery or foresee that the armed robbery would lead to another's death. Accordingly, I conclude that defendant has

---

[24] See *id*.

[25] Citation omitted.

9

failed to pass the procedural hurdles required to file his motion for relief from judgment. Defendant's direct appeal considered the same instructional issue now before this Court, and on direct appeal this Court held that defendant was not entitled to relief. The majority opinion simply recharacterizes defendant's claim as instructional in order to avoid the procedural bar that clearly applies. Even assuming that the issue was not raised on direct appeal, defendant has not demonstrated good cause for failing to raise his sentencing claim in his previously filed motion for relief from judgment. There is therefore no need to reach the merits of defendant's claim.[26]

## III. CONCLUSION

The majority opinion is nothing more than a veiled effort to provide relief to a class of convicted murderers who the majority concludes were slighted by the *Aaron* Court's decision to limit the applicability of its holding to pending and future felony-murder trials. But that sense of equity must give way, because "[o]nly with an assurance of real finality can the State execute its moral judgment in a case," and "[o]nly with real finality can the

---

[26] It would be difficult to assess the merits of defendant's claim at this juncture. Defendant paints a picture of the events leading up to the murder in a light most favorable to him. But too much time has passed to check his veracity as to events that occurred nearly 50 years ago. A half-century's removal from the operative facts makes reliable reexamination practically impossible. Witnesses have died or become untraceable. Memories have faded beyond the possibility of reliable testing. Documentary and physical evidence has been lost or degraded. In sum, the surrounding context that gave the original proceedings their meaning is irrecoverable. Where the evidentiary record has so atrophied, reopening the factual record serves no truth-seeking function and, instead, affirmatively threatens it. But based on the record that we have, if we were to reach the merits, I would conclude that malice is clearly established by evidence that defendant and Wilson acted in concert to commit an armed robbery where a reasonable person would have expected the resulting homicide stemming from an intentional shooting of a person during the course of the armed robbery.

victims of crime move forward knowing the moral judgment will be carried out."[27] " 'To unsettle these expectations is to inflict a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the State and the victims of crime alike."[28] Because this Court expressly concluded that *People v Aaron* should have prospective effect only, and because defendant has failed to establish good cause to merit relief under MCR Subchapter 6.500, I dissent.

Brian K. Zahra

THOMAS, J., did not participate because of her prior involvement in this case.

---

[27] *Calderon v Thompson*, 523 US 538, 556; 118 S Ct 1489; 140 L Ed 2d 728 (1998).

[28] *Id.*, quoting *Herrera v Collins*, 506 US 390, 421; 113 S Ct 853; 122 L Ed 2d 203 (1993) (O'Connor, J., concurring).